[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The claimant, George Kelly, filed a claim for unemployment compensation against his former employer, Universal Software Solutions, Inc. (Universal), for whom the claimant worked as a computer software salesperson. The claimant contended that he was discharged from his employment for reasons other than wilful misconduct, particularly, for declining to sign a new employment agreement. Universal disputed that the claimant was eligible for unemployment compensation, claiming that Kelly either voluntarily quit or was discharged for wilful misconduct in that he refused to perform the required duties of his job.
This is an appeal pursuant to General Statutes § 31-249b[1]
and Practice Book § 511A[2] (now § 22-1) brought by Universal from the decision of the Employment Security Board of Review (the Board) awarding unemployment compensation benefits, under the Connecticut Unemployment Compensation Act, General Statutes §§31-222 to 31-274j, to its former employee, George Kelly. The Board has moved for judgment dismissing the plaintiffs appeal.
The certified administrative record reveals that, after separation from employment with Universal, the claimant filed an application for unemployment benefits with the Administrator of the Unemployment Compensation Act (the Administrator). (Return of Record [ROR], 1.) After a predetermination hearing, the Administrator denied him benefits, determining that he left his employment voluntarily after disagreeing with new terms of employment. (ROR, 11.)
The claimant filed an appeal from the Administrator's decision to the Appeals Referee (the Referee). (ROR, 12.) The Referee first found that, because there was no intent on the claimant's part to voluntarily leave, the separation was a CT Page 12179 discharge. (ROR, 21.) Next, the Referee found that the "employer's request that the claimant update the database was reasonable and, therefore, the claimant's refusal constituted a final act of insubordination," or wilful misconduct. (ROR, 21.) Concluding, therefore, that the claimant was discharged for wilful misconduct, the referee affirmed the Administrator's denial of benefits. (ROR, 21.)
The claimant appealed the Referee's decision to the Board. (ROR, 22.) The Board adopted the following factual findings of the Referee, (ROR, 25):
"The claimant worked from March 1, 1997 to September 5, 1997 as a Project Manager, 40 hours per week, days, at $2,000.00 per month." (ROR, 21.)
"The employer was dissatisfied with the claimant's job performance and advised him that he was not working out and that things had to change." (ROR, 21.)
"As a result of this conversation, on August 25, 1997, the claimant submitted a statement of concern to the President regarding his employment." (ROR, 21.)
"On September 8, 1997, to accommodate the claimant, the employer submitted a new employment agreement." (ROR, 21.)
"The employer addressed most of the claimant's concerns trying to accommodate him and no longer required him to do telemarketing and no longer required him to come to the office on a daily basis." (ROR, 21.)
"The agreement did require the claimant to update the data base in the computer at the employer's home." (ROR, 21.)
"The claimant refused to do this and as a result refused to sign the contract. The claimant wanted the employer to change the data base so that he could update it from his home using his computer." (ROR, 21.)
"The claimant had originally suggested that he go to the employer's home to do his telemarketing, but eventually did not like the setup at the employer's home and felt he could work more efficiently at home. (ROR, 21.) Additionally, the Board modified the findings of fact: "The distance from the claimant's residence CT Page 12180 to the employer's home was approximately fifteen miles."[3]
(ROR, 25.) The Board also specifically vacated the referee's finding that "[t]he employer discharged the claimant for continuing poor job performance." (ROR, 21, 25.)
In reviewing the Referee's determination, the Board concluded that both parties had entered into an informal, verbal agreement, which did not address the exact terms of employment. (ROR, 25.) While not disagreeing with the Referee's determination that the separation was a discharge rather than a voluntary leaving, the Board specifically found that "the claimant's discharge resultednot so much from the claimant's failure to fulfill certain termsof the verbal contract" as from the claimant's refusal to sign the employer's proposed employment contract. (Emphasis added.) (ROR, 25.) Since the claimant was under no obligation to sign a new employment contract, the Board concluded that his refusal to do so could not constitute an act of wilful misconduct. (ROR, 25.) Therefore, the Board ruled that the claimant was discharged for a reason other than wilful misconduct. (ROR, 25.) The Board reversed the referee's decision and sustained the claimant's appeal. (ROR, 25.)
Universal filed a motion to reopen the Board's decision challenging the nature of the claimant's separation. (ROR, 27.) The Board denied the motion to reopen. (ROR, 32.) The Board maintained that the evidence supported its finding that the claimant's separation was a discharge rather than a voluntary leaving. (ROR, 32.) The Board explained that the nature of the claimant's separation could not be characterized as a voluntary leaving because the record revealed that the claimant never communicated an intent to sever the working relationship on a permanent basis and that the claimant would have continued to work for the employer had the employer not broken off the negotiations abruptly. (ROR, 32.)
Additionally, the Board maintained that the claimant's discharge was not the result of wilful misconduct. (ROR, 32.) Again, the Board emphasized its specific finding that "the act which precipitated the claimant's discharge was his refusal to sign the proposed contract of employment . . . and not his alleged failure to fulfill any express or implied conditions of the verbal agreement under which he was hired." (ROR, 32.) Citing case law and previous rulings of the Board, the Board reiterated that the claimant's refusal to agree to substantial and materially adverse modifications of his terms of employment did CT Page 12181 not constitute wilful misconduct because the claimant was not obligated to sign the agreement no matter how reasonable its terms. (ROR, 32.)
On May 13, 1998, Universal appealed from the decision of the Board pursuant to General Statutes § 31-249b and Practice Book § 511A. On appeal, Universal raises two issues, first, that the Board erred in finding that the claimant was not discharged for wilful misconduct and, second, that the Board incorrectly characterized the claimant's separation as a discharge rather than a voluntary leaving.
 I.
"Whether the circumstances of an employee's termination constitute a wilful misconduct on the employee's part is a mixed question of law and fact . . . in which the expertise of the administrative agency is highly relevant." (Internal quotation marks omitted.) United Parcel Service, Inc. v. Administrator,209 Conn. 381, 386, 551 A.2d 724 (1988). In reviewing challenges to the Board's factual determinations on appeal. "the Superior Court does not try the matter de novo. It is not its function to adjudicate questions of fact. Nor may it substitute its own conclusions for those of the [Board of Review]. It may go no further than to determine whether the [Board] acted unreasonably, arbitrarily or illegally. . . . The courts are bound by the findings of subordinate facts and the reasonable conclusions of fact made by the [Board] If [the Board's] conclusions are reasonably and logically drawn, the court is powerless to alter them." (Citations omitted; internal quotation marks omitted.)Guevara v. Administrator, 172 Conn. 492, 495-96, 374 A.2d 1101
(1977).
"If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v. Administrator, supra,209 Conn. 385. CT Page 12182
General Statutes § 31-236 (a)(2)(b) states that "[a]n individual shall be ineligible for benefits, if, in the opinion of the administrator, he has been discharged or suspended for . . . wilful misconduct in the course of his employment." General Statutes § 31-236 (a)(15) defines wilful misconduct as "deliberate misconduct in wilful disregard of the employer's interest, or a single knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not a result of the employee's incompetence. . . ." In determining whether the claimant's acts constituted wilful misconduct, "it is well established that disregard of the standards of behavior that an employer has the right to expect of his employees, by carelessness or negligence of sufficient degree or frequency to show disregard for the employer's interests or equal culpability, constitutes wilful misconduct" as a matter of law. United ParcelService, Inc. v. Administrator, supra, 209 Conn. 386-87. However, "[m]ere violation of a rule does not always constitute wilful misconduct. To have that effect the disobedience must have been deliberate, not merely a thoughtless act on the spur of the moment. . . . The breach of the rule by one who knows at the time that he is breaking the rule is a wilful breach; but if by direct proof, or out of the circumstances, it appears to have been the result of thoughtlessness or inadvertence, the breach cannot be held to have been wilful. It follows that improper or wrong conduct which is intentional, that is, such as is done purposely with knowledge, constitutes wilful misconduct . . ." (Internal quotation marks omitted.) Bigelow Co. v. Waselik, 133 Conn. 304,308, 50 A.2d 769 (1946).
The first issue raised by Universal on appeal is that the Board erred in ruling that the claimant was not discharged for wilful misconduct. Specifically, Universal challenges the Board's factual finding that the claimant was discharged as a result of his refusal to sign the employer's proposed employment contract. Universal argues that "it was not the employment agreement itself to which claimant objected, but the requirement within the employment agreement that Claimant continue to update the prospect database." (Appellant's Brief, pp. 4-5.) Universal contends that the claimant was discharged for his insubordinate refusal to update the sales-prospect database, a requirement that "had always been a part of the [c]laimant's job duties." (Appellant's Brief, p. 6.) CT Page 12183
The evidence in the record does not support such a contention. It is undisputed that the claimant was hired pursuant to an informal, verbal agreement. The Board found that "the claimant's duties were constantly evolving as the employer's business grew, and that the employer and the claimant never attempted to formulate a precise job description until the claimant expressed his dissatisfaction with his working conditions in a memorandum dated August 25, 1997, and the employer responded with a contract proposal on or about September 8, 1997." (ROR, 25.) There is insufficient evidence in the record from which to determine the exact terms of employment under which the claimant was initially hired. Such terms as the number of hours the claimant would work, whether he was required to perform telemarketing duties, and whether and to what extent he was required to update the employer's database were neither established by the parties nor established on the record. Thus, it cannot reasonably be concluded that the claimant's refusal to perform the database updating in the manner prescribed in the proposed employment agreement was ipso facto a refutation of a task that "had always been a part of the [c]laimant's job duties" as Universal contends.
In a related argument, Universal asserts that the Board erred in determining that the claimant's refusal to sign the employment agreement, where such an agreement is specifically requested by the claimant and does not contain any materially adverse changes to the terms of his employment, did not constitute wilful misconduct. As a matter of law, the Board is correct that "an employer cannot unilaterally modify contractual terms of employment which are materially adverse to the claimant without the employee's consent." (ROR, 32); see Torosyn v.Boerhinger-Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13-18,662 A.2d 89 (1995) (maintaining material changes in employee handbook created an offer to change employment terms which can only be operative by agreement of the employee); Bott v.Administrator, Unemployment Compensation, 25 Conn. Sup. 307,203 A.2d 241 (1964) (finding employee's refusal to sign a restrictive covenant did not constitute wilful misconduct because claimant would have accepted materially adverse conditions, which could have been used to her detriment). The Board concedes and has often ruled that "although the employer has the right to effect operational changes that management feels necessary to achieve its various goals," see Gallegos v. U.S. Repeating Arms, Co., Board Case No. 1232-83-BR (8/16/83), that right is limited to operational changes of a minor nature which are within the scope CT Page 12184 of the employee's job description." (ROR, 32.)
As previously discussed, there is insufficient evidence in the record from which to determine the claimant's exact terms of employment pursuant to the informal, verbal agreement under which he was initially hired. Because of this circumstance, the Board was unable to find that "the changes suggested by the employer in its September 8, 1997 proposal were merely operational or that they were within the scope of the claimant's duties." (ROR, 25.) The court finds that this conclusion of the Board was entirely reasonable in light of the evidence before it. Thus, the Board's ruling that the claimant's refusal to sign the proposed agreement did not constitute, in and of itself, an act of wilful misconduct was a correct application of the law to the facts.
 II.
The second issue raised on appeal by Universal is that the Board improperly concluded that the claimant's separation was a discharge and not a voluntary quit. In support of its argument, Universal contends that when the claimant was faced with Universal's ultimatum of either accepting the employment contract with the requirement of updating the database or leaving, the claimant chose to leave.[4] The claimant's choice to leave under these circumstances, Universal argues, constitutes a voluntary leaving, causing the claimant to be ineligible for benefits under General Statutes § 31-236 (a)(2)(A).
General Statutes § 31-236 (a)(2)(A) states, in pertinent part that "[a]n individual shall be ineligible for benefits, if, in the opinion of the administrator, he has left suitable work voluntarily and without good cause attributable to the employer." Section 31-236-18 of the Regulations of Connecticut State Agencies states that "[i]n order to establish that an individual left suitable work voluntarily, the Administrator must find that the individual committed the specific intentional act of terminating his own employment." Furthermore, "a person must commit an intentional act of omission or commission which act in and of itself precludes him from continuing his employment. This interpretation of voluntary leaving requires that the employee intend to do some act which directly prevents him from remaining qualified for the particular position he holds." Bertini v.Administrator, Unemployment Compensation, 39 Conn. Sup. 328, 332,464 A.2d 867 (1983). CT Page 12185
In reviewing, on Universal's motion to reopen, the very claim that Universal makes here, the Board stated that "[a]t the outset, we note that we find no merit to the employer's contention that the claimant's separation should be characterized as a voluntary leaving . . . Based on the record before us, wecannot find that the claimant communicated an intent to sever theworking relationship on a permanent basis by refusing to sign the employer's proposed contract of employment on or about September 8, 1997. The record reveals that the claimant was willing tocontinue working for the employer provided that the employer and he mutually agreed to a modification of his job duties and incorporated them into a written employment agreement. . . . Under the circumstances of this case, we cannot find that the record supports the employer's characterization of the separation as a voluntary leaving because the evidence reveals that the claimant would have continued to work for the employer had the employer not broken off the negotiations abruptly. Accordingly, we find that it was reasonable for the claimant to believe that he was discharged when he refused to accept and sign the employer's proposed employment agreement on September 8, 1997." (Citations omitted; emphasis added.) (ROR, 32.)
The court has reviewed the record of the administrative proceedings and, in accordance with the rules of law governing the standard of this court's review, the court must accept the factual findings of the Board, in particular, the findings concerning the claimant's lack of intent to sever his employment with Universal. These findings are supported by evidence in the record and are entirely reasonable.
 CONCLUSION
On the basis of the whole record, the court cannot say that the decision of the Board was unreasonable, arbitrary, illegal, or an abuse of discretion. For this reason, the law requires that the Board's decision be affirmed.
Accordingly, the Board's motion the appeal is granted.
Peck, J.